OPINION of the Court, by
Judge Logas.
.This is an action bn the case against the plaintiff hi error as a deputy postmaster: m which the right to recover is laid in the default and negligence of the defendant ; by which, it is alleged, certain letters of the plaintiff, containing ⅞ 800. in bank notes, which had beta delivered to the said deputy at the office, to be sent on by the mad, were lost. To this action the defendant pleaded not guilty, and upon the trial of the issue the jury found i»r the plaintiff S 800 in damages.
The case is now brought before this court upon a writ of error, and by fce assignment of error the following questions are presented for the consideration, of the court.
1st. Whether the action will lie against the deputy postmaster 1
ad. Whether the court erred in permitting the deposition of William Murphy to he read in evidence, under the objections stated in the first bill of exceptions I
3d. Whether the court erred in refusing anew trial on the ground stated in the second bill of exceptions ?
■First, then, with regard its Ac defendant’s liability in this action,
*212 By an act of congress, passed March 1799, a general post-office is established, under the direction of a postmaster-general ; who is directed to appoint an assistant, and such clerks as may be necessary for performing the business of his office: to establish post-offices, aod appoint postmasters ; and to give hie assistant, the postmasters, and all other persons whom he shall employ, or who may be employed in any ol the departments of the general post-office, instructions relative to their duty. ' It provides that every postmaster shall keep an office, in which one or more persons shall attend at such hours as the postmaster-general shall direct, for the purpose of performing the duties thereof ; that ah persons employed in the care or conveyance of the mail, shall take an oath to perform the duties required of them ; and subjects them to certain fines and penalties for a breach of dutv.jy
Front the nature of the institution, it was not to be expected, that the pos tin aster-general could have a personal superintendance over the several post-offices ; nor that he could have it in his power always to appoint proper persons to those offices. It seems clear, therefore, that he ought not to be made answerable far the jiegligence and improper conduct of all persons employed in the whole of those departments, It is not only the postmasters, but likewise their deputies or assistants, who are known as acting under the provisions of this law. They are all recognized by the act; are under the same injunctions and penalties ; and alike subject to the directions and instructions of the postmaster-general. As such then, they cannot plead a want of privity between them and the party injured by their pegligence and default in office. jjThey ought not to he permitted to hide their conduct as officers and known agents executing the duties of the office, under the supposed official existence of only one known acting agent in law-lL It is not here material to decide, whether the postmaster himself would be liable for the negligence and default of the deputy ; but if the negative of this proposition could be maintained, it would follow, that a private injury, growing ,o,ut of the most palpable negligence and inattention of the deputy, must pass without redress, unless the deputy can be held liable. The con-s sequence would be monstrous. It would sap the foua- *213 Nation of. the institution, and put it in the power of postmasters and their deputies, by secret and artful confederacy with others beyond the hope of detection, to ruin individuals, Without being amenable to the law ; unless per chance they were discovered as direct actors or principals in the guilt.
But it is held in England, on a statute in this respect nearly similar to our own, that the postmaster-general is not liable for at private injury, proceeding from the negligence or default of a deputy or assistant in his office — 1 Ld. Ray at. 646. The injury in those cases happened in the office of the postmaster-general, and it seems that the analogy would be strong, upon a fair view, when applied to this case as having happened in the office of the postmaster, through the conduct of his deputy : or by supposing the injury to happen in the office of the postmaster-general of the United States, from the negligence of his assistant or clerk.
It would therefore follow from this doctrine, if the action would not lie against the deputy, the immediate receiver of the letters, for his own personal negligence, that the injured person must be without redress, until the taker of the money himself can be found out.
But suffice it for the present to say, with regard to the responsibility of the postmaster for the conduct of his deputy, by which individual loss is sustained, that this court is not prepared to say he ought to pass free from liability. We cannot, however, yield to a proportion that the responsibility of the postmaster, will exonerate his deputy from this action for the deputy’s default in office.
In this case the deputy had been for a considerable time, and was then in fact the principal manager of the post-office (the postmaster himself residing several miles from the office) : the letters containing the notes were delivered to him, and the negligence alleged as the cause of their loss was attributed to him. Upon general principles, then, he ought to be liable^ if the charge against him be true in fact; for there is no maxim of law less unexceptionable, upon the solid basis of fight and sound policy, than that he who, for gain or a premium, undertakes to perform an act or discharge a duty, and from negligence or culpable omission suffers the interest and property of his employer to, be destroy-» *214 ed or lost, is liable for the injury. We shall therefore; proceed to consider the other points in the cause.
The second assignment of error is founded on an objection to the reading of a deposition, because it did not appear that it was taken within the hours specified in the notice for taking it. But the magistrates certify that the deposition was taken agreeable to the notice, on the day and at the place stated therein ; which is presumed to be the notice filed in the suit, and mentioned in the bill of exceptions. We therefore think the court decided right in permitting the deposition to be read, notwithstanding the objection.
It remains to consider whether the court erred in refusing a new trial. This question brings in view the whole evidence, as stated in the second bill of exceptions.
The evidence in the cause is extremely equivocal, indeed, in establishing the fact that the letters were lost whilst under the control of the defendant. We are aware, however, of the great difficulty of proving the loss in such cases to have happened under the care of the first receiver of the letters : but, on the other hand, are equally aware of the difficulty for him to prove his innocence, although he may be as innocent as the child unborn. In this situation we are left to decide. The delivery of the letters, to be seat by the mail, on the 24th of October 1804*, is proven without doubt ; and that these letters contained the bank notes, is satisfactorily to be inferred. But whether the deputy postmaster failed to put them to the mail, or whether they were opened on the route from thence, at Danville, to the town of Washington, in Mason, or purloined by the postmaster or person who received them there, must, from the nature of the circumstances, hang in doubt. Towards removing that doubt, the defendant proved by the plaintiff’s witnesses a good character ; that he was not extravagant; and that he had not been known to handle considerable sums of money, or make any large purchase. But on the other hand, it was proven that the office, whilst in his care, was too carelessly attended to ; that bank notes had before been lost out of it, or by that mail; that there were complaints of this office being negligently kept; that it was kept in the court* house, where no person resided, the room left fastened *215 only by a latch, when the deputy was absent some distance from town.
What verdict we would have given, if we had been on the jury, is not the question for our decision. The circumstances and evidence in relation to the facts of loss and injury to the plaintiff, and of the negligence of the defendant, belonged peculiarly to the jury to weigh and determine upon. If their verdict were clearly contrary to evidence, it was the duty of the court before whom the cause was tried to have granted a new trial; and if that court improperly refused to do so, and the error was manifest to us, we should feel it a duty to reverse the judgment and direct a new trial; but this power ought to be exercised by this court whip,, extreme caution, when we consider the great difficulty, and indeed the impossibility of bringing the question before us upon paper, as it may have appeared before the court and jury who tried it below. It is true this case does not present th@ same latitude for misconception and adverse understanding of the evidence, as those in which the credibility of witnesses, their prevarication, &c. &c. are all-important to the decision. This consideration furnishes additional weight in favor of the application to this court ; yet we hold that in order to justify this court in reversing and ordering a new trial, upon the ground that the verdict is contrary to evidence, the evidence and verdict ought to appear clear, in an unquestionable light, and without doubt, when carefully examined and compared together, as repugnant and opposed ; the one obviously not supporting or warranting the other. We cannot in this case say that such appears to us to be the fact.
Judgment affirmed, &c.